UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

THE PINKFONG COMPANY, INC.,                           :
                                                      :
                              Plaintiff,              :
                                                      :
                                                      :
            -against-                                 :
                                                      :
080*/*FGR, ESRDGHJMNBF, PHONE MATE, et al.,           :
                                                      :
                              Defendants.             :

-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____3/13/2026____

25-cv-3640 (JGK) (KHP)

**INQUEST**
**REPORT AND RECOMMENDATION**

**TO:    THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE**
**FROM:  KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE.**

The Pinkfong Company, Inc. ("Plaintiff"), brought this action against seventeen different entities that have marketed and sold counterfeit versions of Plaintiff's Baby Shark products on the internet.  Plaintiffs asserted claims for trademark infringement under the Federal Trademark ("Lanham") Act, 15 U.S.C. § 1114; unlawful counterfeiting under 15 U.S.C. §§ 1114(1)(a)-(b), 116(d), and 1117(b)-(c); false designation of origin under 15 U.S.C. § 1125(a); copyright infringement under Copyright Act of 1976, 17 U.S.C. §§ 501(a); and unfair competition under New York common law.  (ECF No. 7 ("Compl.") ¶¶ 54-98)  None of the Defendants answered or moved with respect to the complaint.  Plaintiffs consequently moved for a default judgement.  (ECF Nos. 25, 28, 31)  After issuing an order to show cause (which Defendants failed to respond to), The Honorable John G. Koeltl granted Plaintiff's motion, finding defaulting defendants liable for willful federal trademark infringement and counterfeiting under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), copyright infringement under 17 U.S.C. § 101 *et seq.*, and violation of unfair competition under New York common law.  (ECF Nos. 32, 34)

Judge Koeltl then referred this matter to the undersigned for a recommendation on damages.  (ECF No. 35) Thereafter, Plaintiff filed proposed findings of fact and conclusions of law, attended an inquest hearing, and withdrew the motion to default as to all but two defendants: esrdghjmnbf and Phone Mate.  (ECF Nos. 42, 44)  After review of the submissions, which were uncontested by the defaulting defendants, I respectfully recommend that Plaintiff be awarded the damages set forth below.

## BACKGROUND

Plaintiff is a company based in Seoul, South Korea with offices in Los Angeles, Shanghai, and Hong Kong.  (Compl. ¶ 7)  It specializes in animated and gaming content for children.  (*Id*. ¶¶ 7-8)  Among other things, Plaintiff created a song called "Baby Shark" and a music video to accompany it.  The video was a viral hit on YouTube.  (*Id*. ¶¶ 7-9)  It acquired various trademarks and has registered and unregistered copyrights for Baby Shark products and content and licenses its Baby Shark marks and content to consumer product companies to make Baby Shark toys, books and t-shirts.  (*Id*. ¶¶ 10, 15-18)  Plaintiff sells Baby Shark products through the internet throughout the world, including in the United States.  (*Id*. ¶ 11)  Baby Shark products retail from $14.99 to $49.99.  (*Id*. ¶ 12)  Plaintiff devotes a considerable amount of time and attention to marketing Baby Shark content and products because it has been a very good source of revenue.  (*Id*. ¶¶ 19-22)  As a result, Plaintiff's Baby Shark marks and works have acquired a valuable reputation and goodwill among the public.  (*Id*. ¶ 23)

All of the defendants, believed to be located primarily in China, conduct business on the internet through Amazon and Walmart Marketplace, where they market to consumers worldwide, including in the United States and in New York.  (*Id*. ¶ 25; ECF No. 16 ("Levine Dec.")

2

¶ 3) According to the Complaint, all of the defendants have sold counterfeit Baby Shark products on Amazon and Walmart Marketplace without its authorization and without a license. (Compl. ¶¶ 19-24; Levine Dec. ¶¶ 19-23; ECF No. 17 ("Yang Dec.") ¶¶ 23-24)

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 1, 2025.  Additionally, Plaintiffs sought (1) a temporary restraining order against all defendants from infringing on the Baby Shark copyrights and trademark; (2) temporary transfer of control of defendants' online stores; (3) a temporary restraint of some of the defendants' assets "to preserve Plaintiffs' right to an equitable accounting"; and (4) permission to effectuate service by email and electronic publication.  (See ECF Nos. 7, 12, 15-17)  On May 1, 2025, the Court granted Plaintiff's application for a temporary restraining order and granted alternative service on the defendants.  (ECF No. 18)  On May 7, 2025, Plaintiff served the defendants according to the methods the Court permitted.  (ECF Nos. 19-20)

On May 14, 2025, the Court issued a preliminary injunction against the defendants, extending the terms of the temporary restraining order.  (ECF No. 6)

None of the defendants answered or moved.[1]  None have since appeared.  On August 12, 2025, Plaintiff requested entry of default against the defendants.  Certificates of Default were issued the following day.  (ECF Nos. 25-27)  Upon Plaintiff's motion for default, Judge Koeltl entered a default judgment against all remaining defendants and then referred this matter to the undersigned for an inquest on damages.  (ECF No. 34)

---

[1] On August 8, 2025, Plaintiff filed a notice of voluntary dismissal of the case against defendant Inpany.  (ECF Nos. 23-24)

On February 18, 2026, the Court held a hearing on damages.  None of the defendants attended the conference.  (ECF No. 41)

Between filing the motion for a default and the date of the hearing on damages, the Second Circuit issued its decision in *Smart Study Co., Ltd. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025).  There, the Court held the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Service Convention") does not permit email service of process on mainland China-based defendants.  *Id.* at 166, 170.  However, the Second Circuit noted that alternative service was available under Federal Rule of Civil Procedure 4(f) on China-based defendants with no known physical address so long as service otherwise satisfies due process*. Id.* at 168*; see also FoxMind Canada Enterprises Ltd. v. APROAT, et al.*, Case No. 25 Civ.5837 (JSR), Dkt. 54 (S.D.N.Y. Feb. 13, 2026) (finding email service not inconsistent with Hague Convention where there was no known address for defendant and complied with constitutional due process).  In light of this decision, Plaintiff represented on the record that it researched whether any of the defendants previously served through alternative service had physical addresses associated with the business.  Plaintiff's counsel further represented that they located physical addresses for all of the defendants except defendants esrdghjmnbf and Phone Mate.  Only these two defendants have unknown addresses insofar as any address located was found to be fraudulent.  (*See* ECF No. 42)  Accordingly, Plaintiff's counsel stated they would serve the remaining defendants with the complaint in this action through the Hague Convention process and seek a default judgment only as to esrdghjmnbf and Phone Mate.

Accordingly, this Report and Recommendation applies only to the two properly served defendants.

## DISCUSSION

### A. Default Judgment

"Federal Rule of Civil Procedure [("Rule")] 55 governs judgments against a party that has failed to plead or otherwise defend" itself in an action. *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 217 (E.D.N.Y. 2016). Rule 55 empowers the Clerk of the Court, upon notification from the moving party, to note the default of the party failing to defend. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011) (citing Fed. R. Civ. P. 55(a)-(b)). Once the Clerk issues a certificate of default, the moving party may apply for entry of default judgment, pursuant to Rule 55(b). *Id*. A default constitutes an admission of all well-pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). In determining whether to grant a motion for default judgment, courts within this District consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the nondefaulting party would suffer as a result of the denial of the motion for default judgment." *IndyMac Bank, F.S.B. v. National Settlement Agency, Inc.*, No. 07 Civ.6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (internal quotation marks omitted); *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455-57 (2d Cir. 2013) (applying these factors in review of lower court's grant of a default judgment).

Here, Plaintiff has satisfied the procedural requirements of Rule 55 by submitting a

request for both entry of default and default judgment.  Further, all three of the foregoing factors weigh in Plaintiff's favor.  First, the defendants' failure to make an appearance and to respond to either the Complaint or Motion for Default Judgment are indicative of willful conduct.  *See IndyMac Bank, F.S.B.*, 2007 WL 4468652, at \*1 (holding that non-appearance and failure to respond to a complaint or motion for default judgment indicate willful conduct).  Second, there is no information before the Court regarding any meritorious defenses to Plaintiff's claims because the defendants have failed to make any appearance and therefore have not provided any information to this Court.  Third, Plaintiff will be prejudiced if it is denied the ability to seek judgment by default because it has no alternative legal redress. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension, and Welfare Funds v. Flooring Experts, Inc.*, No. 12 Civ. 6317 (ADS) (AKT), 2013 WL 4042357, at \*5 (E.D.N.Y. Aug. 8, 2013).

On a default judgment motion, the defendant is deemed to have admitted all of the well pleaded factual allegations contained in the complaint.  Fed. R. Civ. P. 8(b)(6); *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013).  However, "because a party in default does not admit conclusions of law," it is incumbent upon the Court to consider whether the plaintiff has pleaded facts sufficient to establish the defendant's liability with respect to each cause of action. See *Zhen Ming Chen v. Y Café Ave B Inc.*, No. 18 Civ. 4193 (JPO), 2019 WL 2324567, at \*1 (S.D.N.Y. May 30, 2019).  When determining liability from default, the non-defaulting party is entitled to all reasonable inferences from the evidence offered.  *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015).

6

### B. Jurisdiction and Venue

The Court has both subject matter jurisdiction over this case and personal jurisdiction over the defaulting defendants.  Federal subject matter jurisdiction exists over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a), 17 U.S.C. §§ 101 *et seq.*, and 15 U.S.C § 1121. The Court may exercise supplemental jurisdiction over related state claims pursuant to 28 U.S.C. § 1367(a).

Additionally, the Court has personal jurisdiction over the defaulting defendants pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3) insofar as Plaintiff has alleged that the defaulting defendants purposefully sold or offered counterfeit goods into New York through online marketplaces, and those same acts allegedly caused trademark injury in New York.  Here, the allegations fall under CPLR 302(a)(1) because Defendants allegedly purposefully transacted business in New York by operating interactive online storefronts available to customers in New York, accepting payment in U.S. dollars, offering shipment into New York, and allegedly making sales of the counterfeit goods to New York consumers.  *See Chloé v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 165-67 (2d Cir. 2010) (finding that shipping even a single counterfeit handbag into New York, together with the defendant's broader commercial activity in New York, supported personal jurisdiction); *Mattel, Inc. v. Adventure Apparel*, No. 00 CIV. 4085 (RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (concluding that an out-of-state seller who sold allegedly infringing goods through its website and shipped them into New York had "purposefully availed" itself of the privilege of conducting activities in New York, thereby "invoking the benefits and protections of its law." (quoting *Viacom Intern., Inc. v. Melvin Simon Prods.,* 774 F.Supp. 858, 862 (S.D.N.Y.1991))).  The

allegations also fit CPLR 302(a)(3)(ii) because the complaint alleges Defendants committed infringing acts outside New York that caused injury in New York, and that Defendants should have expected consequences here since they were allegedly targeting U.S. and New York consumers and deriving substantial revenue from interstate or international commerce. *See LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E. 2d 883, 886-87 (N.Y. 2000) (explaining that Section 302(a)(3)(ii) reaches out-of-state tortfeasors whose conduct causes in-state injury and who should reasonably foresee New York consequences while deriving in-state revenue).

Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) insofar as Plaintiff alleges, upon information and belief, that the defaulting defendants conduct, transact, and/or solicit business in New York.

### C. Liability

To prevail on a trademark infringement or counterfeiting claim under 15 U.S.C. § 1114, a plaintiff must first establish that it has a valid mark that is entitled to protection under the Lanham Act; and that the defendant used the mark in commerce and in connection with the sale or advertising of goods or services without the plaintiff's consent. *1–800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005). Second, Plaintiff must show that defendant's use of that mark is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." *Id.* at 407. Courts generally consider the eight *Polaroid* factors when evaluating a likelihood of confusion. *See Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). No single factor is dispositive. See *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006).

Plaintiff here has demonstrated that it is the owner of all rights, title and interest to Baby Shark marks and works and provided certificates of registration of the marks. (Yang Dec. ¶¶ 10, 23; Compl. at iv; ¶¶ 14-18, 22-24)  Thus, it has satisfied the first element of a Lanham Act claim. *See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) (noting that "[a] certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid (*i.e.* protectible)").  The allegations that the two defaulting defendants distributed counterfeit products bearing Plaintiff's well-known marks is sufficient to satisfy the second prong.  (Compl. ¶¶ 36, 40-46;ECF No. 7-1) Pictures in the complaint show that the defaulting defendants' counterfeit products are virtually identical to the Baby Shark products offered by Plaintiff and would obviously cause confusion in the marketplace. *See Coach*, *Inc. v. O'Brien*, No. 10 Civ. 6071 (JPO) (JLC), 2012 WL 1255276, at *12 (S.D.N.Y. Apr. 13, 2012).

Moreover, because Plaintiff's allegations establish the two defaulting defendants' liability for trademark infringement, the allegations also establish the defaulting defendants' liability for false designation of origin, passing off, and unfair competition under the Lanham Act. *See Richemont N. Am., Inc. v. Huang*, No. 12 Civ. 4443 (KBF), 2013 WL 5345814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013).[2]

---

[2] To the extent the allegations and evidence presented warrant a default judgment and damages under the federal Lanham Act and Copyright Act, there is no need to determine whether the Plaintiff's allegations establish the defaulting defendants' liability as to the state trademark claims in this case. Unfair competition under state law parallels unfair competition under the Lanham Act, except that the Plaintiff must show either actual confusion or a likelihood of confusion as well as bad faith on the part of the defendants. See *Richemont*, 2013 WL 5345814, at *5 n.15. The defaulting defendants' counterfeiting in these cases establishes both actual confusion between the products of the Plaintiff and the defaulting defendants' products as well as the bad faith on the part of the defendants.

Plaintiff's allegations also establish that the two defaulting defendants are liable for copyright infringement under the Copyright Act.  A copyright plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quotation marks omitted). Plaintiff's certificates of registration for the Baby Shark works demonstrate Plaintiff's valid ownership of the copyright as well as of the originality of the works.  (Compl. ¶¶ 17-20); *see Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001).  The allegations in the complaint along with the depictions of the defendants' products are also sufficient to demonstrate that defendants copied Plaintiff's works without permission by selling products that are virtually identical to Plaintiff's works.  *See Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 544 (S.D.N.Y. 2015) (finding liability for copyright infringement where the plaintiff alleged to own the copyright in the works and featured images in its pleading showing that products sold online were "similar or virtually identical" to the copyrighted works). Because Plaintiff has sufficiently shown that it owns valid copyrights and that the defaulting defendants intentionally sold infringing products substantially identical to Plaintiff's Baby Shark products, Plaintiff has stated a valid federal copyright infringement claim. *See id.*

Because Plaintiff's allegations are sufficient as a matter of law to satisfy the trademark and copyright claims brought in this action, default judgments are properly entered against the defaulting defendants as to liability.

### D.  Damages on Default

"Once liability is established [on default], the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks." *Bleecker v. Zetian*

10

*Sys., Inc.*, No. 12-cv-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing

T*ransatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d

105, 111 (2d Cir. 1997)). "Even when a default judgment is warranted based on a party's failure

to defend, the allegations in the complaint with respect to the amount of the damages are not

deemed true.  The district court must instead conduct an inquiry in order to ascertain the

amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*,

183 F.3d 151, 155 (2d Cir. 1999) (internal citations omitted).

 "Establishing the appropriate amount of damages involves two steps: (1) 'determining

the proper rule for calculating damages on . . . a claim'; and (2) 'assessing plaintiff's evidence

supporting the damages to be determined under this rule.'" *Begum v. Ariba Disc.,* Inc., No. 12

Civ. 6620 (DLC), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting

*Credit Lyonnais*, 183 F.3d at 155).  "[A] hearing is not required where a sufficient basis on which

to make a calculation exists."  *Trustees of the Sheet Metal Workers' Intl. Assn. Local Union No.*

*28 Benefit Funds v Maximum Metal Manufacturers, Inc.*, No. 14 Civ. 2890 (JLC), 2015 WL

8031380, at *2 (S.D.N.Y. Dec. 7, 2015); *see also, Cement and Concrete Workers Dist. Council*

*Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro*

*Found. Contractors Inc.*, 699 F3d 230, 234 (2d Cir. 2012).  "Rule 55(b)(2) and relevant case law

give district judges much discretion in determining when it is necessary and proper to hold an

inquest on damages."  *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (internal

quotation marks omitted).  Plaintiffs bear the burden of establishing their entitlement to

recovery and thus must substantiate their claims with evidence to prove the extent of their

11

damages. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at.  Here, a damages inquest hearing was scheduled, but no testimony was offered because defendants did not appear.

Under Section 35(a) of the Lanham Act, a trademark owner may choose to recover either actual or statutory damages.  15 U.S.C. § 1117(a), (c); *Gucci Am., Inc. v. MyReplicaHandbag.com,* No. 07 Civ. 2438 (JGK), 2008 WL 512789, at *2 (S.D.N.Y. Feb. 26, 2008).  If a trademark owner opts to recover statutory damages, it may be awarded "not less than $1,000 or more than $200,000 per counterfeit mark" or "if the court finds that the use of the counterfeit was willful, not more than $2,000,000 per counterfeit mark."  15 U.S.C. § 1117(c)(1), (2); *see Cengage Learning, Inc. v. Shi*, No. 13 Civ. 7772 (VSB), 2017 WL 1063463 (S.D.N.Y. Mar. 21, 2017).   Section 1117(c) was enacted to address the difficulty of calculating actual damages caused by counterfeiters.  *See, e.g., Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . making proving actual damages in these cases extremely difficult if not impossible.'") (quoting S. Rep. No. 104-177, at 10 (Nov. 28, 1995)), *amended in part*, 328 F. Supp. 2d 439 (2004); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. Sept. 11, 2003) (same).  Section 1117(c), however, "does not provide guidelines for courts to use in determining an appropriate award . . . as it is only limited by what the court considers just." *Gucci Am., Inc.*, 315 F. Supp. 2d at 520 (internal quotation marks and citation omitted).

The Copyright Act has an analogous provision that allows a copyright owner to collect statutory damages.  If a copyright owner opts to recover statutory damages, it may be awarded "not less than $750 or more than $30,000" or, if the court finds that infringement was

12

committed willfully, the court may increase the award to a sum of no more than $150,000.  15

U.S.C. § 504(c).

Many courts have analogized the Lanham Act to the Copyright Act and have considered

the following factors in setting statutory damage awards under both Acts: (1) "the expenses

saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the

copyright [or trademark];" (4) "the deterrent effect on others besides the defendant;" (5)

"whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has

cooperated in providing particular records from which to assess the value of the infringing

material produced;" and (7) "the potential for discouraging the defendant." *Fitzgerald Pub. Co.,*

*Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986); *Philip Morris USA Inc. v. A & V*

*Minimarket, Inc.*, 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009); *Cengage Learning, Inc. v. Bhargava*,

No. 14 Civ.3174 (DAB) (RLE), 2017 WL 9802833, at *4 (S.D.N.Y. Aug. 22, 2017), *report and*

*recommendation adopted*, No. 14 Civ.3174 (DAB) (RLE), 2018 WL 1989574 (S.D.N.Y. April 25,

2018).

Plaintiff seeks damages of $50,000 against each defaulting defendant under the Lanham

Act, 15 U.S.C. § 1117(c), for trademark counterfeiting of Plaintiff's registered marks and under

17 U.S.C. 504(c) for copyright violations.[3]  After reviewing the factors, I recommend that

---

[3] The Plaintiff states that it elects to seek statutory damages solely under the Lanham Act for counterfeiting of the Plaintiff's trademarks. The Second Circuit Court of Appeals has not addressed the issue whether an award of statutory damages under both the Lanham Act and the Copyright Act would be duplicative when the unlawful conduct for both claims is the same, although the weight of authority cautions against awarding damages for both trademark infringement and copyright infringement for the same infringed product. See *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 425 (S.D.N.Y. 2018) (collecting cases). However, insofar as the amount I am recommending is consistent with awards in other similar cases where the Plaintiff sought only damages under the Lanham Act and is within the range of statutory, I do not address duplicative nature of the award because it is not excessive and would be awarded even if the Plaintiff sought damages only under the Lanham Act.

Plaintiff's request for $50,000 in statutory damages under the copyright law against each of the two defaulting defendants be granted for the reasons that follow.

With respect to the first, second, and sixth factors; the defendants' conduct – including their failure to appear, answer or otherwise respond to the Complaint, and comply with any of the Court orders – has made it impossible to determine defendants' profits or sales or to assess any revenues lost by Plaintiff as a result of defendants infringement. *William Mark Corp. v. 1&CC*, No. 18 Civ. 3889 (RA) (RWL), 2019 WL 4195365, at *8 (S.D.N.Y. May 20, 2019), *report and recommendation adopted*, No. 18 Civ. 3889 (RA) (RWL), 2019 WL 4194536 (S.D.N.Y. Sept. 3, 2019); *see also DC Comics, Inc. v. Bobtron Int'l, Inc.*, No. 89 Civ. 4358 (MBM), 1990 WL 106771, at *2 (S.D.N.Y. July 25, 1990) ("The lack of information regarding defendants' sales and profits make statutory damages particularly appropriate for these kinds of default cases*."*).  These factors all support an award of statutory damages.

With regard to the third factor, Plaintiff maintains that the Baby Shark products have achieved great success and acquired a valuable reputation and goodwill among the public through significant promotional efforts by Plaintiff.  (Compl. ¶¶ 19-24, 39, 49; Yang Decl. ¶¶ 3-7, 14-18, 26-28)

Factor five – the defendants' willful conduct – also weighs in favor of an award.  Indeed, by defaulting, willfulness is established.  (Order Granting Default Judgment, ECF No. 89.)  This willful behavior counsels in favor of a statutory damages award that acts as a deterrent to these defendants and other merchants according to the fourth factor.  *See Bumble and Bumble, LLC v. Pro's Choice Beauty Care, Inc.,* No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016), *report and recommendation adopted*, No. 14 Civ. 6911 (VEC) (JLC), 2016 WL

14

1717215 (S.D.N.Y. April 27, 2016) ("The need to deter other counterfeiters is particularly compelling given the apparent extent of counterfeit activity.").

While the requested award of $50,000 in statutory damages for each of the two defaulting defendants is substantial, this number is far below the statutory maximum of $150,000 dollars for willful violations of the Lanham Act.  Plaintiff's requested damages of $50,000 is well within the range of statutory damages awarded by courts in similar cases.  *See, e.g.*, *William Mark Corp.*, 2019 WL 4195365, at *9 (awarding statutory damages of $50,000 to plaintiff toy manufacturer against defendants who sold counterfeit products on Wish.com); *Tangle, Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, And Unincorporated Associations Identified On Schedule A Hereto*, No. 21 Civ. 9352 (LGS) (RWL), 2022 WL 2442302, at *8 (S.D.N.Y. June 29, 2022), *report and recommendation adopted in part sub nom.,* No. 21 Civ. 9352 (LGS), 2022 WL 3098306 (S.D.N.Y. Aug. 4, 2022) (same); *Zuru (Singapore) PTE., LTD. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 22 Civ. 2483 (LGS) (GWG), 2023 WL 2747055, at *4 (S.D.N.Y. Mar. 31, 2023), *report and recommendation adopted sub nom.,* No. 22 Civ. 2483 (LGS), 2023 WL 2986932 (S.D.N.Y. Apr. 18, 2023); *Smart Study Co. v. lizhiwangluo16*, No. 19 Civ. 7725 (JGK), 2020 WL 3639659 (S.D.N.Y. July 6, 2020) (awarding $50,000 in statutory damages in Baby Shark trademark counterfeiting case).  Accordingly, I recommend a total statutory damages award of $100,000.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the default judgment be granted against esrdghjmnbf and Phone Mate in the amount of $50,000 each, together with

15

post-judgment interest at the statutory rate calculated by the Clerk of the Court pursuant to 28

U.S.C. § 1961.


Dated: March 13, 2026
     New York, New York

Respectfully submitted,

KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.** *See also* **Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If a Defendant files written objections to this Report and Recommendation, Plaintiffs may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). If Plaintiffs file written objections, Defendants may respond to such objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2);** *see also* **Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Koeltl. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b);** *Thomas v. Arn*, **474 U.S. 140 (1985).**